```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE        *  MDL Docket No. 2004
                                    4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS    *
                                    Case No.
LIABILITY LITIGATION             *  4:13-cv-244 (Little)
                                 *  4:13-cv-245 (Winchester)
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiffs Janice Little and Julie Winchester were implanted with ObTape. Each Plaintiff asserts that she suffered injuries caused by ObTape. Plaintiffs brought product liability actions against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused their injuries. Plaintiffs also assert that Mentor did not adequately warn their physicians about the risks associated with ObTape. Mrs. Little's husband James asserts a loss of consortium claim. Mentor seeks summary judgment on all of Plaintiffs' claims, contending that the claims are time-barred under Oklahoma law. For the reasons set forth below, the Court agrees, and Mentor's summary judgment

motions (ECF No. 36 in 4:13-cv-244 and ECF No. 36 in 4:13-cv-245) are granted.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

**I.   Factual Background – Mr. and Mrs. Little**

On April 24, 2006, Dr. Clifton Whitesell implanted Mrs. Little with ObTape to treat her stress urinary incontinence.  At the time, Dr. Whitesell was not aware that Mentor had stopped selling ObTape in March 2006.  Mrs. Little's incontinence symptoms improved, and her incision was healing nicely.  But in

---

[1] Winchester and the Littles assert their claims separately in two independent civil actions.  Because the resolution of the summary judgment motions in both actions involves similar issues of Oklahoma law, the Court decides both motions in this single order.

late 2006, Mrs. Little experienced painful intercourse with her husband, and Mr. Little was cut by the sling. At that point, Mrs. Little realized that something had gone wrong.

Mrs. Little returned to Dr. Whitesell in December 2006 and reported recurrent stress urinary incontinence, abdominal pain, and painful intercourse. Dr. Whitesell suspected that Mrs. Little's sling was causing her problems and that he might need to remove it. Dr. Whitesell discussed his suspicion with Mrs. Little, and she decided that she wished to have the sling removed. Dr. Whitesell examined Mrs. Little under anesthesia, determined that the sling had failed, and removed the sling. Dr. Whitesell told Mrs. Little that he had removed the sling because he believed it was causing her pain symptoms. Mrs. Little acknowledges that she understood that the sling had failed and was causing problems; she hoped that removing the sling would cure her symptoms. After the December 2006 removal of Mrs. Little's ObTape, Mrs. Little's abdominal pain resolved, and she was able to resume normal sexual relations with her husband. Her stress urinary incontinence worsened, however. In 2007, Dr. Whitesell implanted Mrs. Little with a different kind of sling. *See* Little Dep. 189:11-16, ECF No. 36-5 (stating that Dr. Whitesell "certainly wasn't going to use the one he had previously used [ObTape] because that one had failed and was -- something was wrong"). Mrs. Little asserts that she did not

3

suspect that her problems might be related to a defect in ObTape until she saw a television commercial regarding mesh implant complications in 2013.

Mrs. Little asserts claims for negligence, strict liability (design defect, manufacturing defect, and failure to warn), breach of express warranty, breach of implied warranty, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. Mr. Little asserts a loss of consortium claim. Mrs. Little concedes that Mentor is entitled to summary judgment on her breach of warranty claims, and summary judgment is thus granted as to those claims.

**II. Factual Background – Winchester**

On September 1, 2004, Dr. Gregory Jia implanted Winchester with ObTape to treat her stress urinary incontinence. Several months after her implant surgery, Winchester began to experience pelvic cramps and malodorous vaginal discharge. Dr. Jia examined Winchester and could feel the sling. Winchester understood that Dr. Jia believed that her sling had become infected. Winchester Dep. 184:6-11, ECF No. 37-5 ("[Dr. Jia] believed that the infection got onto the sling, so he took that sling out and put a new sling in."). In November 2005, Dr. Jia removed Winchester's ObTape and implanted a new ObTape.

A couple months after the second implant surgery, Winchester began to experience vaginal drainage again. She

4

visited Dr. Sherry Thomas, who diagnosed Winchester with a sling erosion and infection in July 2006. Dr. Thomas told Winchester that the sling was an infected foreign body and had to be removed. Thomas Dep. 129:5-7, ECF No. 36-7. Winchester understood that Dr. Thomas was planning to remove her ObTape. Dr. Thomas removed Winchester's second ObTape on July 19, 2006. At some point, Winchester asked Dr. Thomas if the sling could be causing her infections. According to Winchester, Dr. Thomas said "she didn't believe so because she had put several in and had nothing like this happen to them . . . so she believed that, she took the foreign body out . . . and was going to let my vagina wall heal." Winchester Dep. at 261:10-16. Winchester acknowledges that she never asked Dr. Thomas why her ObTape implants had not been a success even though Dr. Thomas had success with the product in other patients. *Id.* at 205:5-12. Winchester asserts that she did not suspect that her problems might be related to a defect in ObTape until she saw a television commercial on mesh implant complications in 2012.

Winchester asserts claims for negligence, strict liability (design defect, manufacturing defect, and failure to warn), breach of express warranty, breach of implied warranty, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. Winchester concedes that Mentor is

5

entitled to summary judgment on her breach of warranty claims, and summary judgment is thus granted as to those claims.

## DISCUSSION

The Littles and Winchester filed their actions in this Court on July 9, 2013 under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. Plaintiffs lived in Oklahoma when they filed their actions, and all of Plaintiffs' ObTape-related treatment took place in Oklahoma. The parties agree that Oklahoma law applies to Plaintiffs' claims.

Oklahoma has a two-year statute of limitations for product liability claims. Okla. Stat. tit. 12, § 95(3); *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1361 (Okla. 1974); *Fuchs v. Fleetwood Homes of Texas*, 149 P.3d 1099, 1101–02 (Okla. Civ. App. 2006). Plaintiffs do not dispute that this two-year statute of limitations applies to their negligence, strict liability, fraud, and misrepresentation claims. They contend, however, that their claims did not accrue under Oklahoma's discovery rule until they saw a television advertisement about mesh complications shortly before they filed their actions.

Under Oklahoma's discovery rule, the statute of limitations for a product liability action begins to run when "the plaintiff knows, or as a reasonably prudent person should know, that he has the condition for which his action is brought and that defendant has caused it." *Williams v. Borden, Inc.*, 637 F.2d 731, 734 (10th Cir. 1980) (applying Oklahoma law); *accord Daugherty v. Farmers Co-op. Ass'n*, 689 P.2d 947, 950-51 (Okla. 1984) (confirming that Oklahoma applies the discovery rule in product liability actions).  The discovery rule applies when a plaintiff, "despite the exercise of due diligence, [is unable] to know of the injury or its cause."  *Resolution Trust Corp. v. Grant*, 901 P.2d 807, 813 (Okla. 1995).  "The purpose of the rule is to exclude the period of time during which the injured party is reasonably unaware that an injury has been sustained so that people in that class have the same rights as those who suffer an immediately ascertainable injury."  *Id.*  Once a plaintiff knows or should know of a connection between the defendant's product and her injuries, she "is required to pursue [her] claim with diligence."  *Daugherty*, 689 P.2d at 951.  "Statutes of limitation were not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by the facts."  *Id.*  "A plaintiff is chargeable with knowledge of facts which he ought to have discovered in the exercise of reasonable diligence."  *Id.*

In *Borden*, the Tenth Circuit predicted that the Oklahoma Supreme Court would apply the discovery rule in product liability actions. The plaintiff in *Borden* developed asthma and believed that her condition was caused by polyvinyl chloride fumes she inhaled at her workplace. At the time, the medical community had not yet discovered that the fumes could cause asthma. The Tenth Circuit found that the plaintiff's claim did not accrue until she could obtain some medical proof on causation. *Borden*, 637 F.2d at 733–34. In *Daugherty*, the Oklahoma Supreme Court stated that the Tenth Circuit in *Borden* "correctly predicted [the Oklahoma Supreme Court's] approval of the discovery rule in those cases applying the statute of limitations to products liability actions." *Daugherty*, 689 P.2d at 950. The *Daugherty* court warned, however, that the discovery rule "must not be interpreted as broadly as could be inferred from *Borden*." *Id.* The *Daugherty* court emphasized that in *Borden*, "a reasonably prudent person could not have discovered the cause of the" asthma because the medical community had not yet determined that PVC fumes could cause asthma. *Id.* In other words, the *Borden* plaintiff "had no way of attributing his symptoms to an injury which defendant's product caused." *Id.* The *Daugherty* court further stated: "Properly limited, a discovery rule should encompass the precept that acquisition of sufficient information which, if pursued, would lead to the true

8

condition of things will be held as sufficient knowledge to start the running of the statute of limitations." *Id.* at 950-951.

In *Daugherty*, the plaintiff asserted that he suffered injuries caused by exposure to toxic pesticides. The plaintiff's doctor diagnosed the plaintiff with pesticide toxicity, and that is when "the connection between the product and the injury was discoverable." *Id.* at 950. At that point, "the circumstances were such as to put a reasonable man upon inquiry," and the plaintiff was "chargeable with the knowledge such inquiry would have produced." *Id.* at 951. But the plaintiff did not pursue a claim against the insecticide manufacturer until nearly three years after his diagnosis, and the Oklahoma Supreme Court concluded that his claims were barred because the record showed that he had enough facts "to put a reasonable man upon inquiry" years before he filed his action. *Id.*

Here, Plaintiffs argue that they did not learn of a connection between ObTape and their injuries until they saw advertisements regarding mesh complications in 2012 or 2013. But each Plaintiff knew that she suffered some injuries related to ObTape well before then.

By late 2006, Mrs. Little understood that her ObTape had failed and was causing problems, and she hoped that removing the

9

sling would cure her symptoms. After Mrs. Little's ObTape was removed in December 2006, her abdominal pain and dyspareunia symptoms resolved. And when Mrs. Little underwent another sling implant surgery in 2007, she received a different type of sling because her doctor "certainly wasn't going to use the one he had previously used [ObTape] because that one had failed and was -- something was wrong." Little Dep. 189:11-16. In sum, Mrs. Little should have been on notice of a connection between at least some of her symptoms and ObTape by December 2006.

By July 2006, Winchester had suffered an ObTape erosion. She knew that her sling was infected and needed to be removed from her body. Winchester asserts that she asked Dr. Thomas if the sling could be causing some of her infections, and Dr. Thomas said "she didn't believe so because she had put several in and had nothing like this happen to them . . . so she believed that, she took the foreign body out . . . and was going to let my vagina wall heal." Winchester Dep. at 261:10-16. Although Dr. Thomas did not tie some of Winchester's infections to ObTape, she did attribute some of Winchester's injuries—including the erosion through Winchester's vaginal wall—to ObTape. For these reasons, Winchester should have been on notice of a connection between at least some of her symptoms and ObTape by July 2006.

10

In summary, Mrs. Little and Winchester knew of or had enough information to know of a connection between ObTape and at least some of their injuries by 2006. A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. Mrs. Little did not point to any evidence that she exercised reasonable diligence to investigate her potential claims. Nor did Winchester. Although Winchester asked one doctor if her infection symptoms might be caused by ObTape and was told that the doctor did not think so because she had a good record of success with ObTape, Winchester knew that the ObTape had eroded through her vaginal wall and had to be removed so she could heal. In other words, while Winchester pointed to evidence that she attempted to follow up on a suspected connection between ObTape and some of her symptoms, she did not point to evidence that she attempted to follow up on the erosion injuries, which she knew or should have known were related to ObTape. Plaintiffs also did not point to evidence that they could not have discovered enough facts to support their product liability and misrepresentation claims had they started investigating the connection they made (or had enough information to make) between ObTape and their injuries within a reasonable time after they discovered the connection.

Plaintiffs filed their actions more than six years after they knew or should have known that at least some of their symptoms were connected to ObTape. Plaintiffs argue that the statute of limitations should be tolled because Mentor fraudulently concealed from Plaintiffs that ObTape was defective, so Plaintiffs could not have been on notice in 2006 that a defect in ObTape caused their injuries. Plaintiffs did not point to any Oklahoma authority holding that a plaintiff must be on actual notice that her injuries were caused by a product defect.[2] Rather, the precedent establishes that a claim accrues when the plaintiff becomes aware of an injury and a causal connection between the injury and the defendant's product. *See Daugherty*, 689 P.2d at 950 (finding that statute of limitations began to run when "the connection between the product and the injury was discoverable"). Furthermore, fraudulent concealment only applies when a party wrongfully conceals material facts to prevent discovery of the cause of action. *Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 54–55 (Okla. 2008). "The 'mere failure to disclose such material

---

[2] Winchester cites the Court's Order in *Dover v. Mentor Corp.*, 711 F. Supp. 2d 1348, 1379-80 (M.D. Ga. 2010), to support her argument that the statute of limitations did not accrue until she had notice of a defect in ObTape. But *Dover* was decided under Georgia law, and as the Court has explained since it decided *Dover,* the Georgia notice principle regarding the statute of limitations is distinguishable from the law of other states, including Oklahoma. *See Bergin v. Mentor Worldwide, LLC*, No. 4:13-cv-135, 2016 WL 3049491, at *1 (M.D. Ga. May 27, 2016).

facts is not sufficient to prevent the running of the statute; but when there is something more than mere failure to disclose, when there is some actual artifice or some affirmative act of concealment, or some misrepresentation which induces the other party to inaction, or to forgo inquiry, the guilty party may not cover up the harm he has thus wrought by aid of the statute of limitations.'"   *Id.* (quoting *Loyal Protective Ins. Co. v. Shoemaker*, 63 P.2d 960, 961 (Okla. 1936).  "One relying on fraudulent concealment to toll the statute of limitations must not only show that he did not know the facts constituting a cause of action, but that he exercised reasonable diligence to ascertain said facts."  *Id.* (quoting *Kansas City Life Ins. v. Nipper*, 51 P.2d 741, 742 (Okla. 1935)).  "'[I]f the means of knowledge exist and the circumstances are such as to put a man of ordinary prudence on inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry' and a plaintiff cannot successfully assert fraudulent concealment in answer to the defense of the statute of limitations."  *Id.* (quoting *Nipper*, 51 P.2d at 747).

Here, Plaintiffs contend that Mentor failed to disclose the true risks of ObTape prior to their implant surgeries.  And Mrs. Little asserts that Mentor failed to disclose that ObTape had been withdrawn from the market by the time she was implanted with it.  But Plaintiffs did not point to any affirmative act of

13

concealment or any misrepresentation by Mentor that induced them not to investigate the connection between ObTape and their injuries.  Again, by 2006, both Mrs. Little and Winchester knew or should have known that at least some of their symptoms were connected to ObTape.  At that point, they had a duty to exercise reasonable diligence to investigate their potential claims.  But they did not.  For all of these reasons, Plaintiffs' claims are time-barred.

Mr. Little's loss of consortium claim is derivative of Mrs. Little's claims; because her underlying claims fail, his loss of consortium claim also fails. *Laws v. Fisher*, 513 P.2d 876, 878 (Okla. 1973).

## CONCLUSION

As discussed above, Mentor's summary judgment motions (ECF No. 36 in 4:13-cv-244 and ECF No. 36 in 4:13-cv-245) are granted.

IT IS SO ORDERED, this 15th day of August, 2016.

                                        s/Clay D. Land
                                        CLAY D. LAND
                                        CHIEF U.S. DISTRICT COURT JUDGE
                                        MIDDLE DISTRICT OF GEORGIA